# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT DANIEL TAMON ADAMS, | ) |
| | ) Civil Action No. 2:12-cv-1178 |
| Plaintiff, | ) |
| | ) Judge Mark R. Hornak |
| v. | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

## OPINION

**Mark R. Hornak, United States District Judge**

Plaintiff filed his Complaint pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*, as a result of a dispute relating to his entitlement to educational benefits under the terms of an incentive enlistment contract he signed with the Department of the Army. While Plaintiff has since received the full amount of benefits to which he was entitled, he now brings this action alleging that two federal agencies, namely the Defense Finance and Accounting Service ("DFAS") and the Department of Veterans Affairs ("DVA"), interfered with his contractual rights and acted negligently in the administration of his educational benefits.[1] Plaintiff seeks damages to property interests and for personal injury.

Currently before the Court is Defendant's Motion to Dismiss, or in the alternative for Summary Judgment, as well as Plaintiff's Motion for Summary Judgment. The Motions are now ripe for disposition. For the reasons that follow, Defendant's Motion is granted and Plaintiff's Motion is denied.

---

[1] The FTCA provides that all actions arising thereunder must be brought against the Defendant of the United States of America, not in the name of the federal employee or agency who is allegedly negligent. 28 U.S.C. § 2679(a) & (b)(1).

## I. BACKGROUND

In August 1998, the Plaintiff entered into a contract with the Department of the Army. Compl. ¶ 1. According to the Plaintiff, the terms of the contract obligated him to eight years of military service in exchange for educational benefits which included Montgomery GI Bill Program ("MGIB") benefits in addition to $25,000.00 in Army College Fund ("ACF Kicker") benefits. *Id.*; ECF No. 9 at 1. Defendant points out that by the time Plaintiff entered active duty, the ACF Kicker benefit had increased to $33,000.00. ECF No. 9 at 1. Plaintiff was honorably discharged in July 2002. ECF No. 12 at 2.

After his discharge, Plaintiff learned from the Department of Veterans Affairs ("DVA") that the Department of the Army had interpreted his contract to mean that he was only entitled to educational benefits in the amount of $33,000 – an amount which included *both* his MGIB benefits and his ACF Kicker benefits, as opposed to funding his MGIB benefits *plus* an additional $33,000 in ACF Kicker benefits. ECF No. 9 at 2. Plaintiff contends that the DVA awarded him $388.66 per month in benefits over 36 months, but that under the contract he was entitled to $694.45 per month over 36 months. Compl. ¶ 6.

Plaintiff asserts that from 2004 through 2007 he "administratively inquired" into the disputed ACF Kicker amount with the Army Human Resource Command and the DVA. *Id.* ¶ 8. In May 2004, Plaintiff was barred from re-enrolling at the Rochester Institute of Technology because he had a past due balance in part because his Kicker benefits were less than he believed he was entitled to under his contract. *Id.* ¶ 7. Plaintiff resumed his academic career with SUNY Empire State College in October 2004. *Id.* ¶ 9.

2

In his Complaint, Plaintiff pleads that he "filed an administrative claim" with the DVA in December of 2007 regarding the disputed monthly payment amount.[2] *Id.* The DVA denied the claim on May 6, 2008, and explained that the Department of the Army correctly determined the monthly Kicker amount and that his monthly payment of $388.66 was correct. *Id.* ¶ 10; ECF Nos. 9-14 & 12-7. The denial also noted that while Plaintiff's benefits were extended until the end of the May 2, 2008 term, his thirty-six (36) months of payments exhausted on March 8, 2007 and was not payable thereafter. ECF No. 9-14.

Plaintiff also sought and received support from New York State Senator Joseph E. Robach who wrote a letter on Plaintiff's behalf to the Army Review Boards Agency on July 16, 2008 expressing that the disputed amount was delaying Plaintiff's ability to further his education and income earning potential. ECF No. 12 at 4; ECF No. 9-4.

Upon the recommendation of the U.S. Army, Plaintiff filed an application with the Army Board for Correction of Military Records ("ABCMR") in 2008 to determine if his benefits were accurate. Compl. ¶ 11. This application was administratively closed on October 8, 2008 without being referred to the Board. *Id.* In its letter, the ABCMR noted that the contract Plaintiff signed was in fact misleading, but that the ABCMR could not direct the DVA to pay additional benefits due to the statutory caps on payments under the ACF and MGIB programs (the amount Plaintiff sought was above the statutory caps). ECF No. 10-1. The ABCMR also explained that even if they awarded funds as equitable relief, the Defense Finance and Accounting Service ("DFAS") would refuse to pay those amounts from Army funds if the amounts exceeded the statutory caps, and therefore the ABCMR "lacks the ability to provide the relief you seek." *Id.* Plaintiff then

---

[2] Plaintiff later contradicts this statement by stating that it was not an administrative tort claim but a "formal written request for payment of the disputed amount." ECF No. 10 at 2. In his Motion for Summary Judgment, Plaintiff states that he sent the DVA a formal demand for payment dated April 22, 2008. ECF No. 12 at 3. Defendant seems to agree that what Plaintiff filed was not an administrative claim and notes that the DVA does not have any record of an administrative claim being filed by Plaintiff during that period of time. ECF No. 9 at 3.

3

discontinued his education at SUNY Empire State College due to the government's refusal to pay the additional educational benefits. ECF No. 12 at 4.

In 2009, Congress changed the law and Plaintiff renewed his application with the ABCMR for review. ECF No. 12 at 4; ECF No. 9-6. In August of 2009, the ABCMR granted Plaintiff full relief under the contract as Plaintiff understood its terms. Compl. ¶ 13; ECF No. 9-7. The Board found that the contract signed by Plaintiff was misleading and the interests of justice warranted the correction of benefits. ECF No. 9-7 at 2 ¶ 5. This correction resulted in Plaintiff receiving a total of $19,008.00 in MGIB benefits plus $33,000.00 in ACF Kicker benefits. *Id.* at 4. Plaintiff was then instructed to provide certain documentation to the DFAS in order to receive these additional benefits. ECF No. 9-8. Plaintiff informed the DFAS that he was entitled to additional benefits on November 10, 2009, *see* ECF No. 9-9, and he received the payment for the disputed funds on January 10, 2010. Compl. ¶ 14; ECF No. 9-10.

On December 8, 2011, Plaintiff filed administrative complaints with the DFAS and DVA.[3] Compl. ¶ 15; ECF Nos. 9-2 & 9-3. In his claim against the DFAS, Plaintiff asserted that the agency had "engaged in intentional interference with contractual relations" and sought damages for property damage and personal injury. ECF No. 9-2. In his claim against the DVA, Plaintiff asserted that the agency acted negligently in the administration of his educational enlistment incentives and sought damages for property damage and personal injury. ECF No. 9-3. Neither claim has been formally denied. Compl. ¶ 16; ECF No. 9 at 2. .

Plaintiff's Motion for Leave to Proceed *in forma pauperis* was granted on August 30, 2012, and he filed his Complaint on August 31, 2012. ECF No. 2. Defendant filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment on January 30, 2013. ECF Nos. 8 & 9. Plaintiff filed his Response to the above Motion on February 8, 2013. ECF No. 10. Plaintiff

---

[3] Plaintiff signed these forms on December 3, 2011. *See* ECF Nos. 9-2 & 9-3.

then filed a Motion for Summary Judgment on May 17, 2013. ECF Nos. 11 & 12. The Government did not file a response to this latter Motion. The Motions are now ripe for disposition.

## II. STANDARD

### A. *Pro Se Litigants*

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Brown v. City of Long Branch*, 380 F. App'x 235, 238 (3d Cir. 2010) ("*Pro se* complaints, however, must be 'liberally construed' and 'held to less stringent standards than formal pleadings drafted by lawyers[.]'") (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). Because Plaintiff is a *pro se* litigant, this Court may consider facts and draw reasonable inferences where it is appropriate.

### B. *Motion to Dismiss*

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The District Court must accept the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. In short, a motion to dismiss should be granted if a party does not allege facts which could, if established at trial, entitle him to relief. *See Fowler*, 578 F.3d at 211.

"A statute of limitations defense may be asserted in a motion to dismiss under Rule 12(b)(6) 'where the complaint facially shows noncompliance with the limitations period and the

affirmative defense clearly appears on the face of the pleading.'" *Frasier-Kane v. City of Phila.*, No. 12-1757, 2013 WL 1277021, at *1 n.1 (3d Cir. Mar. 29, 2013) (unpublished opinion) (quoting *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994)).

### C. Summary Judgment

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The parties must support their position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). In other words, summary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 250 (1986).

In reviewing the evidence, the court draws all reasonable inferences in favor of the non-moving party. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Huston v. Procter & Gamble Paper Prod. Corp.*, 568 F.3d 100, 104 (3d Cir.2009) (citations omitted). It is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations. *See Anderson*, 477 U.S. at 255; *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004); *Boyle v. Cnty. of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247–48 (1986). An issue is "genuine" if a reasonable jury could possibly hold in the non-movant's favor with regard

to that issue. *See id.* "Where the record taken as a whole could not lead a reasonable trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587; *Huston*, 568 F.3d at 104.

### III. DISCUSSION

In its Motion, Defendant argues that the Plaintiff's Complaint should be dismissed because (1) the claim against DFAS for intentional interference with contractual relations may not be asserted under the FTCA, (2) Plaintiff failed to timely file his claims and is therefore time-barred, and (3) the DVA and DFAS were statutorily prohibited from paying benefits in excess of the statutory caps. ECF No. 9. Plaintiff vigorously contests these defenses in both his Response to the Defendant's Motion, and in Plaintiff's own Motion for Summary Judgment. ECF Nos. 10, 11, 12.

### *A. Interference with Contract Rights against Defense Finance and Accounting Services*

Plaintiff alleges that the DFAS intentionally interfered with his contractual relations, which resulted in harm to him. Compl. ¶ 11; ECF No. 12 at 6. As a sovereign, the United States is immune from suit unless it consents to be sued. *U.S. v. Sherwood*, 312 U.S. 584, 586 (1941). The Federal Tort Claims Act waives the United States' sovereign immunity for certain torts committed by federal employees or an agency. 28 U.S.C. § 2674. *Harris v. Kellogg Brown & Root Servs., Inc.*, No. 12-3204, 2013 WL 3942391, at *15 (3d Cir. Aug. 1, 2013). But that waiver contains numerous exceptions, including "[a]ny claim arising out of . . . interference with contract rights." 28 U.S.C § 2680(h); *see also Small v. U.S.*, 333 F.2d 702, 704 (3d Cir. 1964); *Trico Dev. Assocs. L.P. v. O.C.E.A.N., Inc.*, No. 10-2847, 2010 WL 3614214, at *2-4 (D.N.J.

Sept. 8, 2010). Consequently, the United States has not waived its immunity for claims for interference with contractual rights

However, Plaintiff argues that the DFAS is not a Federal agency but a contractor for the Federal government, and therefore is not entitled to sovereign immunity. ECF No. 10 at 1. According to 28 U.S.C. § 2671, "the term 'Federal agency' includes the executive departments, the judicial and legislative branches, the military departments, independent establishments of the United States, and corporations primarily acting as instrumentalities or agencies of the United States."

The DFAS was created in 1991 by the Secretary of Defense to "improve accounting and financial functions throughout the" Department of Justice. Defense Finance and Accounting Service, http://www.dfas.mil/pressroom/aboutdfas.html (last visited Aug. 30, 2013). The DFAS is an agency of the United States Department of Defense, the executive department charged with providing military forces to protect the security of the United States. *See* Department of Defense, http://odam.defense.gov/omp/Functions/Organizational_Portfolios/Organization_and_Functions_Guidebook.html (last visited Aug. 30, 2013). *See also Kaakamaka v. Def. Fin. & Accounting Serv.*, No. 97-00921, 1998 WL 839595, at *2 (D. Haw. Nov. 2, 1998) ("Defendant DFAS is a federal agency.").

Because the DFAS is a Federal agency as defined by the FTCA and the Plaintiff's sole claim against the DFAS rests upon a theory of tortious interference, a claim for which the United States has not waived sovereign immunity, this claim is dismissed.

### B. *Negligence Claim against the Department of Veterans*

Defendant also argues that the claim brought against it for the conduct of the DVA is untimely and therefore barred from suit. ECF No. 9 at 6-9. Before filing suit under the FTCA, a

plaintiff "shall have first presented the claim to the appropriate Federal agency." 28 U.S.C. § 2675(a); *see also Lightfoot v. U.S.*, 564 F.3d 625, 626 (3d Cir. 2009). Specifically, the FTCA requires that:

> [a]n action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

28 U.S.C. § 2675(a). This administrative exhaustion requirement is "jurisdictional and cannot be waived." *Bialowas v. U.S.*, 443 F.2d 1047, 1049 (3d Cir. 1971). The timing for filing an action is governed by 28 U.S.C. § 2401(b), which states that:

> [a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

*See also Miller v. Phila. Geriatric Ctr.*, 463 F.3d 266, 270 (3d Cir. 2006) ("Under the FTCA, a claim against the United States is barred unless it is presented to the appropriate federal agency 'within two years after such claim accrues.'") (quoting 28 U.S.C. § 2401(b)). After the denial of an administrative claim, "the claimant has two options: (1) he may file suit in the District Court within six months of the denial pursuant to 28 U.S.C. § 2401(b), or (2) he may file a request for reconsideration directly with the agency to which the claim was originally made." *Lightfoot*, 564 F.3d at 627.

"In addition, as the FTCA is a waiver of sovereign immunity by the United States, its requirements are to be strictly construed." *Hause v. U.S.*, 378 F. App'x 158, 159 (3d Cir. 2010).

9

The plaintiff bears the burden of demonstrating subject matter jurisdiction. *Lightfoot*, 564 F.3d at 627.

The determination of when a claim accrues for the purposes of the FTCA is a question of federal law. *Tyminski v. U.S.*, 481 F.2d 257, 262-63 (3d Cir. 1973). The period to file a claim does not begin running until a claim accrues, which is an objective test. *See Barren by Barren v. U.S.*, 839 F.2d 987, 991-92 (3d Cir. 1988). "[T]he general rule under the Act has been that a tort claim accrues at the time of the plaintiff's injury . . . ." *U.S. v. Kubrick*, 444 U.S. 111, 120 (1979).[4]

According to his Complaint, Plaintiff possibly filed an administrative claim on two separate occasions.[5] First, Plaintiff alleges that he filed an administrative claim with the DVA in

---

[4] The Supreme Court in *Kubrick* held that a claim "accrues" within the meaning of the FTCA when the plaintiff knows of both the existence and the cause of his injury. *Kubrick*, 444 U.S. at 122-24. The Third Circuit explained that "in *Kubrick*, the Supreme Court carved out a 'discovery rule' exception for FTCA claims involving medical malpractice." *Miller v. Phila. Geriatric Ctr.*, 463 F.3d 266, 271 (3d Cir. 2006).

This Court, earlier this week, noted that:
> The Third Circuit recently sought to clarify what may have been seen as a certain definitional laxity in the federal courts' distinctions between *accrual* of a cause of action, and the *tolling* of a statute of limitations, particularly in the context of the discovery rule, noting that "[e]ven the Supreme Court has on occasion confused the two concepts." *William A. Graham Co. v. Haughey*, 646 F.3d 138, 149 (3d Cir. 2011) ("*Graham II* "). Our Court of Appeals explained that properly considered, " 'accrual' of a cause of action occurs at the moment at which each of its component elements has come into being as a matter of objective reality, such that an attorney with knowledge of the facts could get it past a motion to dismiss for failure to state a claim." *Id.* at 150. At the time of accrual, "the period prescribed by the applicable statute of limitations ordinarily begins to run." *Id.* at 147. However, *after* a cause of action accrues, there may apply "various statutory and judge-made rules that operate to *toll* the running of the limitations period," in other words, "to stop its running", "abate it," or "suspend or interrupt it." *Id.* (internal citations and marks omitted)). In short, "[t]ime that passes while a statute is tolled does not count against the limitations period." *Id.* at 147–48.

*Leonard v. City of Pittsburgh*, No. 2:13-CV-455, 2013 WL 4541727, at *4 (W.D. Pa. Aug. 27, 2013).

While the Third Circuit has sought to clarify the ambiguity surrounding whether the "discovery rule" is an accrual or a tolling principle, neither application of the rule would salvage the untimeliness of Plaintiff's claims. First, this is not a medical malpractice case. Secondly, even if the discovery rule was applicable in this type of case, it would be unavailing because Plaintiff was well aware of the essential facts more than two years prior to 2011.

[5] As discussed in note 2 above, both Plaintiff and Defendant suggest that what the Plaintiff filed was not an administrative claim. The Court nonetheless analyzes the December 2007 request as an administrative claim in order to see if there is any way in which Plaintiff timely filed his claims. As discussed below, Plaintiff has failed to timely file his claims.

10

December 2007 and that his claim was denied by the agency on May 6, 2008. Compl. ¶¶ 9-10. According to 28 U.S.C. § 2401(b), once a plaintiff receives notice of an agency's denial of his claim, he has six (6) months within which to file his federal complaint. This action was filed in August 2012, well outside of the six month time period. Thus, his complaint is untimely.

Secondly, Plaintiff also pleads that he filed an administrative tort claim with the DVA on December 8, 2011, and has yet to receive a response. Compl. ¶¶ 15-16. As discussed above, "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues." 28 U.S.C. § 2401(b). Plaintiff's Complaint, briefs, and attached exhibits demonstrate that he was injured from the alleged improper practice and knew of his injury well before December 2009 (two years prior to the filing of the December 2011 claim). Plaintiff notes that his payments were shortchanged starting in at least 2004. Compl. ¶ 6. In fact, Plaintiff states that he inquired into the disputed payments from 2004-2007, *id.* ¶ 8, filed an administrative claim in December 2007, *id.* ¶ 9, issued a formal demand for payment in April 2008, ECF No. 12 at 3, sought and obtained senatorial support in July 2008, ECF Nos. 12 at 4 & 9-4, and was forced to resign from college both in 2004 and 2008 due to the missing payments. Compl. ¶ 7; ECF No. 12 at 4. These actions are a clear indication that Plaintiff believed he had been injured by the DVA more than two years before he filed his December 2011 claim. Consequently, his December 2011 claim was not timely filed.

*1. Continuing Violation*

Plaintiff argues that his claim is not untimely because the Defendant's conduct is considered a continuing tortious violation, presumably in an attempt to characterize his claim as on-going in order to extend the accrual date. ECF No. 12 at 5. *See Rankin v. Smithburger,* No

2:12-cv-1373, 2013 WL 3550894, at *4–5 (W.D. Pa. July 11, 2013). A handful of cases have applied the continuing tort doctrine to claims against the federal government under the FTCA. *See, e.g., Robinson v. U.S.*, 327 Fed. App'x 816, 818-19 (11th Cir. 2007); *Hoery v. U.S.*, 324 F.3d 1220, 1222–24 (10th Cir. 2003); *Arcade Water Dist. v. U.S.*, 940 F.2d 1265, 1267-69 (9th Cir. 1991); *Gross v. U.S.*, 676 F.2d 295, 300 (8th Cir. 1982). However, this Court need not decide whether the continuing violations doctrine applies in FTCA cases nor do we need to decide if the ACF Kicker payment was a single violation at the first payment, multiple actionable acts, or capable of being aggregated into one claim.

Plaintiff explains in his Complaint that he was entitled to a monthly payment for thirty-six (36) months. Compl. ¶ 6. According to Plaintiff's own exhibits, his benefits were extended until May 2, 2008 and his monthly payments were not payable after March 8, 2008. ECF No. 12-7. Both of these dates are more than two years before Plaintiff filed his December 2011 claim and thus, even if the payments qualified as a continuing violation, the claim was filed outside of the applicable two-year window (measured from the last payment) for filing an administrative claim under the FTCA.

Plaintiff further argues that his administrative remedy could not have been exhausted before December 22, 2009 when he received a voucher offering the full amount of the contract as understood by Plaintiff, and therefore his December 2011 administrative claim was timely filed. ECF No. 10 at 3. However, as discussed above, a claim accrues at the time of the last event necessary to complete a tort, which is generally at the time the plaintiff suffers an injury. *Kubrick*, 444 U.S. at 120. Giving the Plaintiff the benefit of the doubt and assuming a continuing violation, or that each payment was individually actionable, the latest this would have occurred was on the date Plaintiff received the last ACF kicker payment – which occurred in 2008. ECF

No. 12-7. Not to be deterred, Plaintiff appears to rely on the alleged continuing ill effects from the original violation or violations. *Mumma v. High-Spec, Inc.*, 400 F. App'x 629, 632 (3d Cir. 2010); *see also Weis-Buy Servs., Inc. v. Paglia*, 411 F.3d 415, 423 (3d Cir. 2005) ("[a] continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation."). The Court concludes that even if the continuing violation theory applied under the FTCA and each payment qualified as either individually actionable or that they can be aggregated, Plaintiff's administrative claim was still filed too late and is therefore time-barred.

## 2. Equitable Tolling

Plaintiff also argues that his claims are timely because the statute of limitations should be equitably tolled as a result of the Defendant's conduct. ECF No. 12 at 5. The Third Circuit has held that

> [e]quitable tolling applies when a plaintiff has been prevented from filing in a timely manner due to sufficiently inequitable circumstances. This occurs (1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum. The plaintiff, however must exercise due diligence in preserving his claim. Equitable tolling is an extraordinary remedy which should be extended only sparingly.

*Hedges v. U.S.*, 404 F.3d 744, 751 (3d Cir. 2005) (quotations and citations omitted); *see also Jones v. U.S.*, 366 F. App'x 436, 439 (3d Cir. 2010).

Plaintiff argues that the statute of limitations should be tolled because "Defendant actively concealed its role."[6] ECF No. 12 at 5. To establish an entitlement to equitable tolling under this first prong of the doctrine, the plaintiff must show that (1) the defendant engaged in fraudulent concealment by actively misleading the plaintiff, (2) which prevented the plaintiff

---

[6] "Fraudulent concealment" is a Pennsylvania state tolling principle. *See Fine v. Checcio*, 870 A.2d 850, 860 (Pa. 2005). However, "state-law tolling statutes do not apply to the FTCA's limitations period." *Santos ex rel. Beato v. U.S.*, 559 F.3d 189, 193 (3d Cir. 2009). Because "fraudulent concealment" is similar to the federal tolling principle of "active misleading," the Court will analyze Plaintiff's arguments under this prong.

13

from recognizing the validity of his or her claim within the limitations period, and (3) that the plaintiff's ignorance is not attributable to his or her lack of reasonable due diligence in attempting to uncover the relevant facts. *Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 509 (3d Cir. 2006). Regardless of a defendant's actions, equitable tolling will be inapplicable if the plaintiff was on inquiry notice of the possible existence of the claim during the limitations period yet failed to investigate that possible existence of the claim. *Id.* at 507.

Plaintiff, however, does not point to any affirmative act of concealment on the part of the DVA that caused him to relax his vigilance. Plaintiff does not contend that the DVA actively concealed its involvement or gave false affirmations. Moreover, Plaintiff does not argue that he was prevented from recognizing the validity of his claim due to the DVA's alleged active misleading. To the contrary, as discussed above, Plaintiff took numerous actions to try to vindicate his rights beginning in 2004 which demonstrated that he was on inquiry (and actual) notice of the existence of a claim, that he was quite aware that the DVA was involved, and in fact believed that the DVA had injured him. Compl. ¶¶ 8-16.

Furthermore, our Court of Appeals has explicitly refused to hold that a government agency "has an affirmative duty to inform litigants, including *pro se* litigants, that they have viable judicial, as well as administrative remedies." *Hedges*, 404 F.3d at 752. The Third Circuit explained that "we are unwilling to place such a responsibility on the Government which has inquiries from millions of individuals each year." *Id.* Even so, the letter from the DVA stated that "[i]f you disagree with us, you have the right to appeal our decision." ECF No. 12-7. Consequently, the first prong of the doctrine is not applicable to toll the statute of limitations in this case.

The "extraordinary circumstances" prong is similarly unavailing in this case.[7] The Third Circuit explained that while the facts of a case "may certainly be described as 'extraordinary' in the vernacular sense of the word," they may not be sufficient to warrant the application of the federal equitable tolling rule. *Kach v. Hose*, 589 F.3d 626, 645 (3d Cir. 2009). In *Kach*, a fourteen year-old girl ran away from home to be with a security guard at her middle school, under whose influence she fell and with whom she became intimate, and then spent ten years living secretly in his home. *Id.* at 631. The court held those facts to be insufficient to warrant the application of the federal equitable tolling rule. *Id.* at 645.

However, the Third Circuit did apply equitable estoppel where a plaintiff, in some "extraordinary way", had been prevented from asserting her rights from when she was subjected to negligent care at the age of six as a result of the difficulty of ascertaining the federal status of defendant, the York Health Corporation's pediatric clinic. *Santos ex rel. Beato v. U.S.*, 559 F.3d 189, 203 (3d Cir. 2009). There, Plaintiff and her counsel diligently pursued her claim and researched publicly available clinic records but were unable to discover that because the clinic received federal funds, it was treated as a federal entity for FTCA purposes. *Id.* at 200-01. Counsel thus erroneously believed that a longer limitations period applied to the plaintiff's claim when he belatedly filed her negligence claim in state court. *Id.* at 191. The Third Circuit held that in light of Santos' tender years, and because information disclosing the clinic's federal status was "if not covert, . . . at least oblique," Santos had been prevented from asserting her rights in an extraordinary way, thus triggering equitable tolling. *Id.* at 202. Unlike the case in *Santos*, Plaintiff was well aware that his injury stemmed from a federal agency, as evidenced by his numerous interactions with the DVA, ABCMR, Department of the Army, and DFAS. "[W]e are

---

[7] While the Plaintiff does not argue that the latter two prongs apply to his case, for the sake of completeness the Court will consider these as well.

constrained to conclude that [Plaintiff] has presented a 'garden-variety claim[ ] of excusable neglect,' not an extraordinary circumstance that warrants equitable tolling." *Jones*, 366 F. App'x at 441 (differentiating case from *Santos* in part because "[a]s Jones well knew, the VAMC is a federal facility.") (quoting *Santos*, 559 F.3d at 197).

Finally, it cannot be said that Plaintiff mistakenly asserted his rights in the wrong forum because (1) he properly sought the amount owed from the DVA, (2) properly (albeit belatedly) filed his SF-95 with the DVA, and (3) later brought suit in the district court. *See also Jones*, 366 Fed. App'x at 440.

Because neither the continuing violation doctrine nor equitable estoppel are applicable in this case, Plaintiff's claims against the DVA are facially untimely and are time-barred.[8] Therefore the remainder of Plaintiff's Complaint is also dismissed.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss or in the alternative for Summary Judgment is granted. Plaintiff's Motion for Summary Judgment is denied. An appropriate Order will issue.

Mark R. Hornak
United States District Judge

Dated: August 30, 2013
cc: All counsel of record
Robert Daniel Tamon Adams

---

[8] "It goes without saying that statutes of limitations often make it impossible to enforce what were otherwise perfectly valid claims. But that is their very purpose, and they remain as ubiquitous as the statutory rights or other rights to which they are attached or are applicable. We should give them effect in accordance with what we can ascertain the legislative intent to have been." *Kubrick*, 444 U.S. 111, 125 (1979); *see also McNeil v. U.S.*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel. As we have noted before, in the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.") (quotation and citation omitted).